UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. S1-4:11CR246 CDP |
| ) | (FRB) |
| JAMES C. SMITH, ) | |
| DOMINIC HENLEY, ) | |
| ANTHONY ROBINSON, and ) | |
| JERRY ELKINS, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM,
REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

All pretrial motions in the above cause were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). Each of the above defendants filed motions seeking to suppress evidence obtained by the government through the use of court authorized electronic surveillance. The motions are as follows:

1. Defendant James C. Smith's Motion To Suppress Contents Of Any And All Electronic Surveillance (Docket No. 419)

2. Defendant James C. Smith's Supplement To Motion To Suppress Contents Of Any And All Electronic Surveillance (Docket No. 628)

3. Defendant Dominic Henley's Motion To Suppress The Contents Of Any Electronic Surveillance (Docket No. 435)

4. Defendant Anthony Robinson's Motion To Suppress Electronic Surveillance (Docket No. 518), and

5. Defendant Jerry Elkin's Motion To Suppress Electronic Surveillance Evidence (Docket No. 452)

Testimony and evidence was adduced on the defendants' motions at a hearing before the undersigned on April 5, 2012. From the testimony and evidence adduced at the hearing the undersigned makes the following findings of fact and conclusions of law:

Findings of Fact

The evidence adduced at the evidentiary hearing shows that the government conducted court ordered electronic surveillance during the investigation of the matters alleged in the indictment. The government intends to offer in evidence at trial conversations of the defendants which were intercepted and recorded during such surveillance.

On January 10, 2011, Assistant United States Attorney Sirena M. Wissler appeared before United States District Judge Henry E. Autrey and made an application for interception of wire communications over telephone number (630) 669-1107 (referred to in the applications, affidavits, and orders as Target Telephone #1). (See Government's Exhibit 2A.) The application was accompanied by and referred to an affidavit of Andria Van Mierlo, a Special Federal Officer with the Federal Bureau of Investigations (F.B.I.), which was also signed and sworn before Judge Autrey on January 10, 2011. (See Government's Exhibit 2-B.) Agent Van Mierlo's affidavit established that she was investigating several persons, including the defendants James C. Smith, Dominic Henley, and Anthony Robinson for violations of various federal laws. The affidavit indicated

that the communications of those individuals were expected to be intercepted on telephone number (630) 669-1107 which was subscribed to by Debra Thomas, and used by Allan Hunter, one of the persons under investigation. The communications expected to be intercepted and sought to be intercepted concerned the details of offenses committed by the subjects as well as the nature, extent, and methods of operation of the criminal activity being committed by the suspects and others yet unknown, the identities and roles of leaders, accomplices, aiders and abettors, co-conspirators and participants in their illegal activities, and the precise scope and nature of the operation, including the identification of other unknown members of the conspiracy and the roles each co-conspirator performs in the conduct and management of the enterprise, the dates, times, places, schemes and methods for the criminal enterprise involving racketeering, drug trafficking and money laundering, the existence and location of records pertaining to the suspects' illegal activities, including information reflecting the manner in which the division of payments for the illegal acts occurs, and the location and disposition of proceeds from those activities, information concerning the amounts and types of criminal predicate acts committed by the suspects, the existence, location, and disposition of drugs, guns, stolen property, evidence of assaults and cash, and admissible evidence as to the commission of the above described offenses.

The affidavit set out that investigators had received information from two separate confidential human sources (CHS) involving the activities of the persons involved in the criminal activities under investigation. One of the confidential human sources (CHS-1) had been in contact with subjects of the investigation and had made numerous audio and video recordings with the subjects. The affidavit set out the nature of the relationship between the CHS-1 and the subjects, and described transactions and conversations that occurred between the subjects and CHS-1. The affidavit also described related law enforcement activities which had corroborated or confirmed information provided by CHS-1. The affidavit also described that pen register surveillance had been conducted on the telephone for which the wiretap order was being sought, and that information gathered through the use of the pen registers and toll records, described in detail in the affidavit, showed extensive contacts between the subjects using the described telephone.

Lastly, the affidavit explained why the wiretap was needed and the reasons why alternative investigative techniques had not been, or were not likely to be, successful in determining the entire manner and scope of the organization's activities, or were too dangerous to be used. The affidavit set out in detail the investigative tools and methods used in the investigation thus far, including visual surveillance of the suspects, pen registers,

telephone toll records analysis, grand jury proceedings, witness interviews, confidential informants, undercover officers, search warrants, arrests, review of reports of past incidents, and financial investigations. The affidavit recited in specific detail how each of these investigative tools had been used in the investigation and why each tool had not been successful in achieving the goals of the investigation or why they would not be successful in doing so, or were too dangerous to use. (See Government's Exhibit 2B, Pp. 52-78; Exhibit 2D.)

On January 10, 2011, Judge Autrey signed an order authorizing the interception of wire communications over telephone number (630) 669-1107. (See Government's Exhibit 2C.) The order states that the Court found probable cause to believe that the listed individuals were committing violations of 21 U.S.C. 841(a)(1), 843(b), 846 and Title 18 U.S.C. §§ 1962, 1963, 1959, 924(c), 1956 and 1957; that the telephone listed was being used in connection with the commission of those offenses; and that communications concerning the offenses were likely to be intercepted. The order also found that normal investigative techniques had been tried and had failed, reasonably appeared to be unlikely to succeed if tried; or were too dangerous to be employed. The order authorized the wiretap interception for thirty (30) days.

On February 9, 2011, Assistant United States Attorney Sirena M. Wissler appeared before United States District Judge Audrey G. Fleissig and made an Application for Continued Interception of Wire Communications over telephone number (630) 669-1107. (See Government's Exhibit 2H.) The application was again accompanied by and referred to an affidavit of F.B.I. Special Officer Andria Van Mierlo. The affidavit reiterated and incorporated the information set out in Officer Van Mierlo's previous affidavit accompanying the first application. The affidavit set out information that had been learned since the first application, including some of the information learned as a result of the first 30 day interception period. The affidavit noted that the information learned during the first interception had been helpful but that it had not revealed the entire scope of the organization, its activities, and members. (See Government's Exhibit 2I.)

On February 9, 2011, Judge Fleissig signed an Order Authorizing the Continued Interception of Wire Communications over telephone number (630)669-1107. (See Government's Exhibit 2J.) The Order states that the Court found probable cause to believe that the listed individuals were committing violations of 21 U.S.C. §§ 841(a)(1), 843(b), 846 and 18 U.S.C. §§ 1962, 1963, 1959, 924(c), 1956 and 1957; and that communications concerning the offenses were likely to be intercepted. The Order again found that

normal investigative techniques had been tried and failed; reasonably appeared to be unlikely to succeed if tried; or were too dangerous to be employed. The Order authorized the continued wiretap interception for 30 days.

On March 10, 2011, Assistant United States Attorney Kenneth R. Tihen appeared before United States District Judge E. Richard Webber and made a Second Application for Continued Interception of Wire Communications over telephone number (630) 669-1107. (See Government's Exhibit 2N.) The application was again accompanied by and referred to an affidavit of F.B.I. Special Officer Andria Van Mierlo. The affidavit reiterated and incorporated the information set out in Officer Van Mierlo's previous affidavits accompanying the first and second applications. The affidavit set out some of the information learned as a result of the second 30 day interception period. The affidavit noted that the information learned during the first and second interceptions had been helpful but had not revealed the entire scope of the investigation, its activities, and members. (See Government's Exhibit 20.)

On March 10, 2011, Judge Webber signed the Second Order Authorizing the Continued Interception of Wire Communications over telephone number (630)669-1107. (See Government's Exhibit 2P.) The Order states that the Court found probable cause to believe that the listed individuals were committing violations of 21 U.S.C.

§§ 841(a)(1), 843(b), 846 and 18 U.S.C. §§ 1962, 1963, 1959, 924(c), 1956 and 1957; and that communications concerning the offenses were likely to be intercepted. The Order again found that normal investigative techniques had been tried and failed; reasonably appeared to be unlikely to succeed if tried; or were too dangerous to be employed. The Order authorized the continued wiretap interception for 30 days.

Target Telephone #1 was used during the course of the interception by Allan Hunter. The telephone and Hunter were physically located during most if not all of that time in the State of Illinois. All of the conversations monitored and intercepted pursuant to the intercept orders were overheard and monitored by officers in St. Louis, Missouri.

The law enforcement personnel involved in monitoring conversations pursuant to the court ordered electronic surveillance were instructed prior to beginning their monitoring as to the types of conversations to be intercepted and the types to be minimized, methods of doing so, etc. (<u>See</u> Government's Exhibit 1 - 10 page letter from Assistant United States Attorney Sirena M. Wissler to all Monitoring Agents and Officers.) All officers or agents involved in the monitoring are required to read and sign a copy of the letter (Exhibit 1). There was also a face to face meeting between the agents and the government attorney at which the minimization requirements were further explained. During the

interceptions the monitoring officers used a system of spot monitoring whereby conversations were monitored for two minutes. If the conversations appeared nonpertinent to the matters being investigated the monitoring was terminated. One or two minutes later the officers would again begin monitoring for pertinent conversations.

### Discussion

As grounds to suppress evidence obtained by means of the court authorized interceptions defendants Smith, Henley and Robinson argue that the affidavits of Officer Van Mierlo fails to meet the so-called necessity requirement of 18 U.S.C. § 2518(1)(c) that normal investigative procedures have been tried and failed, or appear unlikely to succeed or are too dangerous to undertake.

> [T]he necessity requirement of section 2518 was meant to insure that wiretaps are not routinely employed as the initial step in an investigation. Thus, while the statute does require that normal investigative procedures be used first, it does not require that law enforcement officers exhaust all possible techniques before applying for a wiretap. The government is simply not required to use a wiretap only as a last resort. Whether the statutory requirement is met is to be determined by the issuing judge in a commonsense manner . . .

United States v. Macklin, 902 F.2d 1320, 1326-27 (8th Cir. 1990), cert. denied 498 U.S. 1031 (1991). Here, the wiretap was not used as the initial step in the investigation. The affidavit described various techniques used by law enforcement officials to gather

evidence in the case. Although some of these techniques had developed some evidence, "Even if conventional techniques have been somewhat successful . . . a wiretap may still be authorized." United States v. Maxwell, 25 F.3d 1389, 1394 (8th Cir. 1994). The affidavit described in great detail why some investigative techniques had failed or why they would be of no value. The affidavit described that the use of various techniques had failed to fully reveal the full scope of the conspiracy, its complete membership and methods of operation. This is sufficient to meet the necessity requirement. United States v. Thompson, 210 F.3d 855, 858-59 (8th Cir. 2000); United States v. Jackson, 345 F.3d 638, 644 (8th Cir. 2003).

Defendants Henley and Elkins in support of their motions to suppress evidence assert that the telephone conversations intercepted pursuant to the orders were not properly "minimized."

18 U.S.C. § 2518(5) imposes a duty on the government to conduct the surveillance in a way to ensure that unauthorized interceptions will be minimized. Whether the government complied with those requirements is determined by an objective reasonableness standard. Scott v. United States, 463 U.S. 128 (1978); United States v. Williams, 109 F.3d 502, 507 (8th Cir. 1997). The burden is upon the defendant to show that the government did not meet the minimization requirements. United States v. Garcia, 785 F.2d 214, 221-22 (8th Cir.), cert. denied,

sub. nom. Barker v. United States, 475 U.S. 1143 (1986); United States v. Giacalone, 853 F.2d 470, 482 (6th Cir. 1988).

> In considering whether the government's conduct was reasonable, a reviewing court must consider a variety of factors, including the scope of the enterprise, the agent's reasonable expectation of the content of a call, the extent of judicial supervision, length and origin of a call, and use of coded or ambiguous language. More extensive wiretapping is reasonable when the investigation focuses on determining the scope of a widespread conspiracy. The same is true when the conversations are in [jargon]. Thus, the government's conduct could be reasonable even if the total number of conversations intercepted contained a high percentage of nonpertinent calls.

United States v. Macklin, 902 F.2d 1320, 1328 (8th Cir. 1990), cert. denied, 498 U.S. 1031 (1991) (Internal citations omitted).

After consideration of these factors it appears that the agent's efforts were reasonable in this case. The order authorizing the wiretap named numerous interceptees. If an intercepted phone call involved one or more nonnamed interceptees and was non-criminal in nature, the order required the listening agent to minimize the call. The order also required the agents to submit ten-day reports to the authorizing judge to ensure that proper minimization techniques were being used. The monitoring agents were aware of the minimization requirement and were trained and instructed in how to comply with such requirement and so acknowledged in writing before the interceptions began. United States v. Avery, 589 F.3d 936, 939 (8th Cir. 2009). The spot check

method of monitoring used by the agents has been held to be a reasonable method of minimization of nonpertinent conversations. United States v. Ozar, 50 F.3d 1440, 1448 (8th Cir.) cert. denied, 516 U.S. 871 (1995).  Defendant Elkins focuses on the number of conversations which were not minimized in support of his motion. Because of the nature of the matters being investigated, the large number of persons involved, and the use of jargon or code words by the participants in the conversations it was reasonable that more conversations would be overheard. United States v. Avery, 589 F.3d at 939; United States v. Ozar, 50 F.3d 1447-48. Further, even if there were minimization violations, the suppression of all evidence obtained pursuant to the order, as sought by the defendant, is not an appropriate remedy.  The appropriate remedy is suppression of any nonpertinent or privileged conversations which were intercepted.  Id.  The defendant has not adduced any evidence of specific conversations which he claims should be suppressed.

Defendants Smith, Henley, Robinson and Elkins assert in their motions as grounds to suppress the evidence obtained as the result of the court authorized interception that the United States District Court was without jurisdiction to issue the Order authorizing the interception because the telephone over which calls were to be intercepted (Target Telephone #1) was never located in the Eastern District of Missouri.

Evidence before the Court shows that Target Telephone #1 was a mobile cellular telephone used by Allan Hunter, one of the subjects of the investigation.  At the time of the applications for the three orders, and apparently at most times during these interceptions, Hunter and the telephone, were located in the State of Illinois.  However, the place at which the intercepted telephone calls were being contemporaneously monitored and first listened to was located in St. Louis, Missouri.

To obtain a wiretap authorization order, a law enforcement agent must file an application with a "judge of competent jurisdiction," id. § 2518(1), which is defined to include "(a) a judge of a United States district court or a United States court of appeals," id. § 2510(9).  Section 2518(3) authorizes a district judge to approve a tap "within the territorial jurisdiction of the court in which the judge is sitting (and outside that jurisdiction but within the United States in the case of a mobile interception device authorized by a Federal court within such jurisdiction)."  "Interception" is defined as "aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device."  Id. § 2510(4).

In United States v. Rodriquez, 968 F.2d 130 (2nd Cir.), cert. denied, 506 U.S. 847 (1992), the Second Circuit Court of Appeals held that

> [T]he language of §2510(4), the legislative history of that section, and the policy considerations of Title III all persuade us that for purposes of §2518(3)'s jurisdictional requirement, a communication is intercepted not only where the tapped telephone is located, but also where the contents of the redirected communications are first to be heard.

Id. at 136.

Numerous courts have since followed and agreed with this holding in Rodriquez. See United States v. Tavarez, 40 F.3d 1136 (10th Cir. 1994); United States v. Denman, 100 F.3d 399, 403 (5th Cir. 1996); United States v. Ramirez, 112 F.3d 849, 851-53 (7th Cir. 1997); United States v. Luong, 471 F.3d 1107 (9th Cir. 2006). Defendants Robinson and Elkins seem to imply in their motions that the holding in United States v. Nelson, 837 F.2d 1519 (11th Cir. 1988) is to the contrary. While it is true that in Nelson the court held that the place of interception refers to the place where a communication is initially obtained, several courts have construed the holding in Nelson as not ruling out "the possibility that the initial listening to the recording by the intercepting agent might also be considered part of the interception." United States v. Denman, 100 F.3d at 403; United States v. Tavarez, 40 F.3d at 1138, Fn1 (Same).

Several of the defendants imply that the judges who signed the intercept orders were misled by the government into believing that Target Telephone #1 was at the time of the application, or at some other time, within the Eastern District of

Missouri. Such is clearly not the case as each of Officer Van Mierlo's three affidavits stated that,

> HUNTER and Target Telephone #1 are located in the Northern District of Illinois, however HUNTER has utilized Target Telephone #1 to contact CHS-1 and other St. Louis Chapter WOS OMG members. The criminal investigation into the WOS OMG originated with the St. Louis WOS OMG Chapter. As the investigation progressed, it was revealed that the St. Louis Chapter and numerous other WOS OMG chapters were part of the larger criminal WOS OMG organization which spans across the United States. The wire room and recording equipment will be physically located in St. Louis, Missouri.

(See Government's Exhibit 2B, P.7, Fn1; Government's Exhibit 2I, P.4, Fn1; and Government's Exhibit 20, P.4,Fn.1). In United States v. Ramirez, supra the court noted that the intercept order contained language, similar to the order in this case, that "in the event that the cellular telephone is transferred outside the territorial jurisdiction of this Court, interceptions may take place in any jurisdiction within the United States." The court in Ramirez held that the intercept order issued in the Western District of Wisconsin was valid even though the target telephone "may never have been there." Ramirez, 112 F.3d at 852.

Because the intercepted conversations were heard and monitored at the "listening post" in St. Louis, Missouri, within the Eastern District of Missouri, the court had jurisdiction to issue the orders.

Defendant Robinson asserts that the United States Supreme Court holding in United States v. Jones, ___ U.S. ___, 132 S.Ct.

945 (2012) supports his claim that the court was without jurisdiction to enter the intercept orders. In Jones the Supreme Court held that the warrantless use of a tracking device violated the Fourth Amendment. Defendant quotes a footnote in Justice Alito's concurring opinion which he claims supports his position in this motion. The footnote reads as follows:

> In this case, the agents obtained a warrant, but they did not comply with two of the warrant's restrictions: They did not install the GPS device within the 10-day period required by the terms of the warrant and by Fed. Rule Crim. Proc. 41(e)(2)(B)(i), and they did not install the GPS device within the District of Columbia, as required by the terms of the warrant and by 18 U.S.C. § 3117(a) and Rule 41(b)(4). In the courts below the Government did not argued, and has not argued here, that the Fourth Amendment does not impose these precise restrictions and that the violation of these restrictions does not demand the suppression of evidence obtained using the tracking device. See, e.g. United States v. Gerber, 994 F.2d 1556, 1559-1560 (C.A.11 1993); United States v. Burke, 517 F.2d 377, 386-387 (C.A.2 1975). Because it was not raised, that questions is not before us.

___ U.S. ___, 112 S.Ct. at 964, n.11. As noted by Justice Alito, the claim asserted by defendant Robinson here was not before the Court in Jones, and the holding of Jones is inapplicable to the jurisdictional claims made by defendant Robinson in his motion.

Defendant Robinson also asserts that the government's use of a GPS cell phone tracking device to locate and apprehend him in another district based on a warrant issued in this district was also unlawful because this court had no jurisdictional authority to

issue the warrant.  The defendant's argument is again based on the Supreme Court's holding in Jones, which as noted above is not applicable here because, as noted by Judge Alito, the issue was not raised or decided in Jones.  The government states that it does not intend to offer in evidence any evidence or information obtained through the use of the GPS device.  The defendant asserts that his "arrest" should be suppressed.  Even if law enforcement officials were able to locate and arrest the defendant as the result of the use of a GPS device obtained and executed in some way as to violate defendant's Fourth Amendment rights, that fact would not be grounds to "suppress" the arrest.  An illegal arrest is not a bar to a subsequent prosecution and conviction. United States v. Crews; 445 U.S. 463, 474 (1980).  The defendant is not himself a suppressible "fruit" of an illegal arrest. Id.

Defendant Robinson also avers in his motion that similar GPS orders were entered regarding other defendants.  He claims that the use of such orders violated the Fourth Amendment and suggests that the court should conduct a hearing to determine whether the application and orders for electronic surveillance were tainted by the acquisition of such evidence.  The defendant has presented absolutely no evidence to the court in support of these assertions and therefore, no hearing on this claim was required. United States v. Mims, 812 F.2d 1068, 1073-74 (8th Cir. 1987).

<u>Conclusion</u>

For all of the foregoing reasons the defendants' motions should be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant James C. Smith's Motion To Suppress Contents Of Any And All Electronic Surveillance (Docket No. 419); Defendant James C. Smith's Supplement To Motion To Suppress Contents Of Any And All Electronic Surveillance (Docket No. 628); Defendant Dominic Henley's Motion To Suppress The Contents Of Any Electronic Surveillance (Docket No. 435); Defendant Anthony Robinson's Motion To Suppress Electronic Surveillance (Docket No. 518), and Defendant Jerry Elkin's Motion To Suppress Electronic Surveillance Evidence (Docket No. 452) be denied.

The parties are advised that any written objections to these findings and determinations shall be filed not later than **October 5, 2012.** Failure to timely file objections may result in waiver of the right to appeal questions of fact. <u>Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990).

*Frederick R. Buckles*
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of September, 2012.